## Codding, Administrator, *et al. versus* Wood.

112  371
140  150
112      371
22 SC ²556
112      371
210     ³607

1. Where the court withdraws the evidence from the jury and gives binding instructions, on review by the Supreme Court the question is, whether or not there was any evidence in the cause from which the facts in issue might be fairly inferred; and in determining this the court will not pass upon the credibility of the witnesses, nor the conflict in the evidence, nor will the preponderance of the proofs be considered; but the facts must be assumed to be as stated.

2. What a contract between parties is, in its terms and extent, is ordinarily for the jury under all the evidence; its force and legal effect is a matter of law for the court.

3. However general the terms of a contract may be, it comprehends only those things in respect of which it clearly appears the parties proposed to contract.

4. Words employed in a release should not be extended beyond the consideration; otherwise a release is made for the parties which they never intended nor contemplated.

March 15th, 1886.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ. STERRETT, J., absent.

ERROR to the Court of Common Pleas, of *Bradford county:* Of January Term, 1885, No. 255.

This was a *scire facias* to revive and continue the lien of a judgment brought by James Wood against James H. Codding, administrator *de bonis non* of David Cash, deceased, Mary Cash Griswold, heir of David Cash, deceased, and Henry S. Griswold, her husband.

The following are the facts as they appeared on the trial before MAYER, P. J., holding a special court in the 13th Judicial District:

The judgment was originally entered in 1858 in favor of Gurdon Hewett and others against David Cash. The lien of the judgment was restricted from certain lands which have been called in these proceedings the coal lands. The judgment was revived in 1862, during the lifetime of David Cash, with the same restriction. David Cash died in 1864, intestate, leaving a widow, Mary A. Cash, and children, to wit, George P. Cash, Charles D. Cash, Fred. A. Cash, Louise, afterward intermarried with James Wood, the plaintiff, and since deceased, and Mary Cash, one of the defendants, now intermarried with Henry S. Griswold.

David Cash died seized of considerable real estate, including the homestead and the coal lands.

In 1867 the Hewett judgment was revived against the

administratrix for $5,550, lien restricted as before. In 1869 an amicable partition was made of the real estate, excepting the coal lands and the homestead.

At the time of the partition it was agreed between the children of David Cash that the Hewett judgment, then amounting to five thousand dollars, should be paid by them in equal proportions, to wit, one thousand dollars each.

James Wood, the present plaintiff, was then the husband of Louise and a party to the agreement stated.

As the agent for his wife and as attorney for Mary, he paid their proportions of the Hewett judgment.

The judgment was revived against the administratrix of David Cash, 29th of August, 1872, for $1,758.95, with interest from June 5th, 1872. The last previous revival was June 20th, 1867.

May 10th, 1873, the judgment was assigned by Hewett to Charles Chaffee, who purchased it by request of Wood and for his benefit, Wood agreeing to repay Chaffee, which he subsequently did, and received an assignment thereof. From May 10th, 1873, Wood was substantially the owner of the judgment. He purchased the judgment, as he stated, for the purpose of protecting his wife and Mary from any further payment on account thereof, and for the purpose of enforcing the collection of the balance due thereon from George P., Charles D., and Fred. A. Cash.

May 20th, 1873, the judgment was revived against Mrs. Cash as administratrix, and George P., Charles D., and Fred. A. Cash. The names of Louise Wood and Mary Cash were omitted from this revival.

Mary Cash was married to Henry S. Griswold, February 11th, 1874. Mrs. Louise Wood died November 8th, 1875, and James Wood was her sole devisee.

November 11th, 1875, Mr. Wood made an exchange of the interest in the homestead which descended to his late wife, for certain lands of Mrs. Griswold.

The deed from Mr. Wood to Mrs. Griswold was drawn with a clause to the effect that nothing therein contained should be construed in any wise to affect the lien of the Hewett judgment. When it was offered to Mr. and Mrs. Griswold the clause was objected to by them, because Mr. Wood had before stated to Mary that, as he had bought the judgment for her protection, it should be collected out of the boys (meaning George, Charles and Fred.) and should not affect her.

Mr. Wood explained that the clause was inserted for his own protection—that if he, the owner of the Hewett judgment, should make an unqualified conveyance of an interest bound by it, it would not only amount to a release of the inter-

[Codding, Admr., v. Wood.]

est conveyed but of the others who were bound. But Mr. Wood stated to Mr. and Mrs. Griswold that under no circumstances should they ever be called upon to pay a dollar of it.

Mr. Wood was asked to give a writing to show this, whereupon he manifested grief that Mr. and Mrs. Griswold should not have sufficient confidence to trust his assurance already given, and upon this they were persuaded to accept the deed which otherwise would have been refused.

By this means Mrs. Griswold became the owner of two interests in the homestead—one by descent to herself, the other the interest descended to Louise. As to the latter interest the lien of the Hewett judgment had expired before this *scire facias* issued.

In 1876, the descended interest of George P. Cash in the homestead was sold at sheriff's sale. It was bidden off by one Kirby under an arrangement with Mr. Wood, made for himself and Mr. Griswold, that they would pay Kirby $1,000 for the interest whatever it might bring. It was struck down to Kirby for $500, and Mr. Wood and Mr. Griswold gave Kirby their note for $500, and the sheriff a note for $500. The morning after the sheriff's sale an agreement was made between Mr. Wood and Mr. Griswold, on behalf of Mrs. Griswold, that the sheriff's deed for the interest of George should be made to her, and that she should pay the two $500 notes, which was accordingly done.

In this conversation the Hewett judgment was mentioned, and Mr. Wood claimed that it was still a lien upon the interest of George. It was agreed that if Mrs. Griswold took this interest, there should be no liability for the Hewett judgment so far as she had gone, *i. e.*, as to the three interests she held, including that of George, but Mr. Wood cautioned Mr. Griswold that as to any further interests which he might thereafter acquire in the homestead, he must look out for himself so far as the Hewett judgment was concerned. It was also a part of the agreement that Kirby should assign to Wood a judgment he had agreed to assign to Wood and Griswold as a part of the agreement made at the sheriff's sale, and the judgment was so assigned,

Charles D. Cash and Fred. A. Cash became insolvent. In 1874, by deeds of assignment, all of their property, real, personal and mixed, was assigned in trust for benefit of creditors. These assignments embraced their interests in the homestead and the coal lands.

In January, 1878, this real estate was sold at assignee's sale under an order of court. Annexed to the assignee's petition in the case of F. A. Cash was the following stipulation:

" The undersigned lien creditors accept notice of the in-

[Codding, Admr., *v.* Wood.]

tended application by H. L. Scott, assignee, to the Court of Common Pleas for leave to sell the real estate of Fred. A. Cash discharged from all liens, and waive any further notice."

A similar stipulation accompanied the petition in the case of Charles D. Cash.

These stipulations were signed by Mr. Wood.

The interest of Fred. A. Cash in the coal lands was sold at assignee's sale for $2,660, the interest in the homestead for $905. The interest of Charles D. Cash in the coal lands was sold for $2,650, and in the homestead for $905. All these interests were purchased by N. N. Betts in trust for James Wood and others. Meantime the portion of the Hewett judgment for which George P. Cash was liable had been received from him or out of the proceeds of his property.

The testimony of Mrs. and Mr. Griswold material to the question decided is recited in the opinion of the Supreme court.

The court withdrew the evidence from the jury, and gave binding instructions to find for the plaintiff.

Verdict by direction of court for the plaintiff for $1,444.25, and judgment thereon, whereupon the defendants took this writ, assigning for error, *inter alia*, the withdrawal of the evidence from the jury, and the giving of binding instructions to find for the plaintiff.

*John F. Sanderson* (*Howard Overton, Jr.*, with him), for plaintiffs in error.—1. The scope and application of the verbal agreements between Wood and Mr. and Mrs. Griswold was for the jury, under the instructions of the court.

2. The rights of Mrs. Griswold to contribution from Fred and Charles, and subrogation against their property on payment by her, together with the knowledge of this relation on the part of Mr. Wood, make out the relation of suretyship. Add to this his assurances and Mrs. Griswold's reliance upon them; and her equities, upon the testimony of Wood himself, and independent of an express contract of release, are complete on his negligence: Gearhart *v.* Jordan, 1 Jones, 325; Lowrey *v.* McKinney, 18 P. F. S, 294; Martin's Appeal, 1 Out., 85; Craft *v.* Moore, 9 Watts, 451.

The burden of proof to show no injury to the surety is upon the creditor: Holt *v.* Bodey, 6 Harris, 206.

*Davies & Hall and R. A. Mercur*, for defendant in error.— 1. As to the agreement to release at the time of the execution and delivery of the deed for the exchange of property, in the absence of any allegation of fraud, accident or mistake, the deed is the best and only evidence of what was agreed to: Martin *v.* Berens, 17 P. F. S., 460.

[Codding, Admr., v. Wood.]

Mrs. Griswold is asking for equitable relief, and if she succeeds in her demand it will be most inequitable. She got the one fifth of the homestead (worth all she gave) for the land on the side hill, and now claims a release of her other property from the lien of Wood's judgment, which is worth as much more. How can this be done? What has she given for this alleged release? It has often been decided that the words used in a release ought not to be extended beyond the consideration for which it was given: Rapp v. Rapp, 6 Barr, 45; McLarren v. Robertson, 8 Harris, 125; Lyman v. Clark, 9 Mass. Rep., 234; Rich v. Lord, 18 Pickering, 322.

And we do not see any substantial difference between such principle and that involved in this case.

2. The affidavit of defence in this case does not aver either fraud, accident or mistake, nor does the evidence show any. The deed to Mrs. Griswold is plain and unambiguous in all its parts, and she and her husband ought not to be allowed to destroy it and import a new and different agreement: Martin v. Berens, 17 P. F. S., 462–463; Rowand v. Finny, 15 Norris, 192; Hunter v. McHose, 4 Out., 38; Thorne, McFarland & Co. v. Warfflein, Id., 519.

3. Here is a case of equitable defence set up, and supported only by the oath of one of the defendants, and that contradicted by himself, as well as by defendant in error. And the defence must fail according to the rulings in Juniata Building and Loan Association v. Hetzel, 7 Out., 508; Kenny v. McClellan, 7 Phila., 655; Audenried v. Walker, 8 Norris, 127.

Mr. Justice CLARK delivered the opinion of the court, April 5th, 1886.

At the trial of this cause, in the court below, the learned judge withdrew the evidence from the consideration of the jury, and gave binding instructions to find for the plaintiff. The defendants, Mary C. Griswold and Henry S. Griswold, her husband, contended that the judgment should not be revived against them, for the reason that Mrs. Griswold had paid her part, and, by the agreement of James Wood, the present plaintiff, had been released as to the balance. The sole question, therefore, for consideration here is, whether or not there was any evidence in the cause directly showing a valid release of Mrs. Griswold, or from which such a release might be inferred; and in the determination of this question we are not to pass upon the credibility of the witnesses or the conflict in the evidence, or to be governed by the preponderance of the proofs. The question is, whether or not there was any evidence in the cause from which the disputed fact might be fairly inferred. It seems to be conceded that, at the time

[Codding, Admr., v. Wood.]

of the amicable partition of the real estate in 1869, it was agreed, by and between the five heirs of David Cash, deceased, that the judgment, then amounting to $5,000, should be paid by them in equal proportions; and that, pursuant to that agreement, whilst Hewitt was still the holder and owner of the judgment, James Wood, as the agent for his wife, Louise, and the attorney for Mary, had paid their respective portions thereof. It is also admitted that Hewitt, having declined to release Louise and Mary, upon payment of their shares, from further responsibility to him, James Wood afterwards, on the 10th May, 1873, through Charles Chaffee, purchased the judgment for the purpose of protecting his wife, Louise, and her sister, Mary, from further payment, and of enforcing the collection of the balance from the brothers, George, Charles and Frederick, the three remaining heirs. Mrs. Griswold testifies that Mr. Wood told her repeatedly he had the judgment assigned to him, and that he held it to protect her and Mrs. Wood; that it should not cost either of them a dollar, that the boys had property to pay it, and their property should pay it; that his object in buying the judgment was to protect his wife and the witness. On the 20th May, 1873, and again on the 3d February, 1879, the judgment was revived against the administratrix of the estate of the deceased, and against George, Charles and Frederick, only, the names of Louise and Mary having been entirely omitted in the proceedings.

On the 8th November, 1875, Louise Wood died, James Wood being the sole devisee of her estate, and on the 11th November, 1875, Mr. Wood made an exchange of his interest in the homestead (acquired under the will of his deceased wife) for certain lands of Mrs. Griswold. The deed from Mr. Wood contained a clause, as follows : "This conveyance is in no way to affect the lien of a certain judgment, originally in the name of Gurdon Hewitt v. David Cash, and now owned by the said party of the first part." Mrs. Griswold says she refused to take the deed on account of the above recited clause contained in it; that Wood assured her then, that under no circumstances should the Hewitt judgment ever cost her a dollar; that the boys had property to pay it, and that he would collect it out of their property. That her acceptance of the deed should not make her in any way liable; that he could not release her, without releasing those who should pay it; but under no circumstances should she be held for it. She asked him for a writing to this effect, but he took some offence at the suggestion, and she accepted it without writing. On her cross-examination, she says Wood told her that this clause in the deed "should not make any difference;" "should not affect her property," or "make her liable for the Hewitt

debt;" we were to have it, she says, "just as the arrangement had been—that it should never cost us a dollar; that we would not be holden for the debt; that the boys had property to pay it, and their property should pay it." These statements of Mrs. Griswold were modified to some extent by Mr. Wood, and in some particulars were denied; but with this we have nothing to do; we must, for the purposes of this case, assume the facts to be as stated.

What the contract is, in its terms and extent, is ordinarily for the jury, under all the evidence; but, assuming it to have been what Mrs. Griswold and her husband say it was, its force and legal effect become a matter of law for the court. The agreement of the heirs, that each would pay their proportional part of the judgment, did not of course, bind Hewett; nor after the assignment to Wood, did it oblige him, as the as-signee, to collect the residue from those of the heirs in default. It is true that he purchased the judgment for the express pro-tection of the girls, and said that it should not cost them a dollar, that the property of the boys' should pay it; but this was a merely voluntary promise without consideration, and lacks the essential requisites of a contract.

The defendant, Mrs. Griswold, claims in the first instance however, that her acceptance of the deed, dated 11th of No-vember, 1885, under the circumstances stated, operated as a release of her liability on the Hewett judgment. We do not think so. What was said at this time was expressly referable to the particular transaction then in hand; and it is plain, from the language employed, that the agreement, if any ex-isted, was that, notwithstanding the saving clause written in the deed, the rights of the parties to the Hewett judgment were to remain as before; that the clause in question, "should not make any difference," or "affect her property," or "make her liable for the Hewett debt;" but she "was to have it just as the arrangement had been." If there had been no previous release of the defendant's liability, none would appear to have been then in contemplation of the parties; for it is admitted that Mr. Wood told Mrs. Griswold at the time that he could not release her, assigning as a reason he could not release one party without releasing all; there is not only an absence of proof to establish any such intention of the parties, but to give the transaction this effect would extend the release beyond the consideration upon which its validity necessarily depends.

The effect of the saving clause, in the conveyance of this particular undivided interest, was the subject matter of the contract, and the words of an agreement are ordinarily intended to be applied to the thing about which the parties are con-tracting: Edelman v. Yerkel, 27 Penn. St., 26. Courts of

Equity, under the old practice, restrained general expressions when it was clear from the subject matter and the circumstances, that the words were intended to be used in a restricted sense, and the same power is exercised in our courts, where equity remedies are applied through common law forms. However general, therefore, the terms of a contract may be, it comprehends only those things in respect of which it clearly appears the parties proposed to contract: Case *v.* Cushman, 3 W. & S., 544. Nor should the words employed in a release be extended beyond the consideration; otherwise we make a release for the parties which they never intended or contemplated; Rapp *v.* Rapp, 6 Penn. St., 45; McLarren *v.* Robertson, 20 Penn. St., 125; Noble *v.* Burke, 5 Phil., 526; Wharton's Cont., 1037; Lyman *v.* Clark, 9 Mass., 238. If the purpose of the plaintiff upon this writ of *scire facias* was to charge Mrs. Griswold, as a terre tenant of the interest conveyed under the deed, in contravention of the agreement otherwise, a different question would be presented; but as it is, her interest as an heir only which is sought to be charged, to relieve her from responsibility, she must establish a general release, or a release as to that interest.

But the testimony of Henry S. Griswold as to the transaction between these parties in May, 1876, when the interest of George P. Cash was sold by the sheriff, is such, we think, as required a submission to the jury. Mr. Griswold, in the interest of his wife, and Mrs. Wood, in her own interest, attended that sale; it was arranged that one Kirby, who held a judgment against George P. Cash for some $500 or $600, should bid off the property as low as he could, and that Mrs. Wood and Mrs. Griswold would take it off his hands at $1,000. This arrangement was consummated; Kirby bid the property off at $500. Wood and Griswold gave their note to the sheriff for the amount of Kirby's bid, and, although Kirby's judgment was not reached in the sale, they gave Kirby their note for $500, according to the arrangement. Mr. Griswold testifies:—

The next morning Mr. Wood saw me on the step—I think I went away the next morning on the morning train—on the front step of the homestead—and he told me he didn't know what he got an interest in that house again for—the homestead; that he didn't want it; would like to have me take it off his hands; and in the conversation that morning he stated to me that the Hewett judgment was a lien upon this interest that we had bought at sheriff's sale, and I agreed to take the interest that morning; we had bought George's interest; and agreed to give him—; I told him there was an understanding that I supposed we were to have the balance of the judgment;

[Codding, Admr., *v.* Wood.]

told him so that morning; he said he didn't know whether we were or not.

Q. What judgment? A. Balance of a judgment against—that Kirby held to make up the thousand dollars; I told him I didn't suppose we were going to give him the thousand dollars for the bid. and not get anything of the judgment. and I agreed to let Mr. Wood have the difference between the five hundred dollar bid and the thousand dollars that we paid for the property, and take it—take George's interest—but the Hewett judgment, Mr. Wood said, was a lien upon it; and he agreed, in consideration of the five hundred dollars balance of the judgment and my taking the interest, that so far as I had gone I should not be liable; but he said I must look out for myself if I got any more of the homestead—any other judgments came up that I bid off, I must look out for them. but so far as I had gone—why, the Hewett judgment should not be recovered against me.

Q. You say "as far as I had gone;" had you any interest at that time? No; I had no interest; I had bid this off for my wife.

Q. Repeat what he said. A. He said that so far as the interest that I already had in taking these—including this interest that I had that morning agreed to take—I should not be liable, or my wife should not be liable—we should not be liable.

Q. What were you to give him? A. What did I give him?

Q. Yes? A. I gave him the balance of the judgment that he should get from Mr. Kirby.

Q. Do you know whether this judgment was assigned from Mr. Kirby to Mr. Wood? A. I understand that it was.

Q. To whom was the conveyance made? A. The conveyance was made to my wife.

If it be true, as we understand Mr. Griswold to say, that Wood and Griswold agreed jointly to take from Kirby the interest of George P. Cash at $1,000; if Griswold afterwards, in behalf of his wife, agreed with Wood to take that interest in severalty and pay the $1,000; if the Kirby judgment, with Griswold's consent, was transferred by Kirby to Wood—and in consideration thereof it was agreed that Mrs Griswold, as far as she had gone, that is to say, upon the interests or shares in the homestead she then held, should not be liable for the Hewett judgment, the contract thus shown being founded in a sufficient consideration, would, without doubt, contain all the requisites of a valid release. The transaction, as it is stated, involved all the interests Mrs. Griswold then had in the homestead; this was the subject matter of the contract; the parties were not bargaining as to the effect of a saving

[Kingsbury, Garnishee, *v.* Davidson.]

.clause in the. conveyance of a single share, but expressly for the release of all the shares Mrs. Griswold had. We assume the facts to be as Mr. Griswold states them; his testimony is contradicted by Mr. Wood, and the averments of the affidavit of defence, it is argued, are inconsistent with his evidence. But we cannot weigh the evidence; the truth must be ascertained and established by another tribunal. Upon an examination of the whole case, we are of opinion that there was sufficient evidence to require a submission to the jury.

     The judgment is reversed, and a *venire facias de novo* awarded.