## Camden Safe Deposit & Trust Co. *v.* Eavenson et al., Jennie M. Stern, Appellant.

Argued December 6, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Owen J. Roberts,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellant.—The mere acquirement of the fee by Pusey clearly did not terminate appellant's lease.

When he acquired the fee, his fee fed appellant's leasehold estate: Skidmore v. Ry., 112 U. S. 33; Peoples Street Ry. v. Spencer, 156 Pa. 85.

Clause 15 could not come into effect unless there was first a termination of Pusey's lease.

There was no termination of Pusey's lease because he did not intend that there should be a merger of his leasehold in the fee which he acquired.

It was early established, and particularly in equity, that whether merger takes place will depend upon the intention of the party in whom both estates vest: Moore v. Bank, 8 Watts 138; Bryar's App., 111 Pa. 81; Pease v. Doane, 33 Pa. Superior Ct. 6; Waldron v. Wahl, 286 Pa. 237; Danhouse's Est., 130 Pa. 256.

The statute of frauds is not a bar to prove the real consideration: Cridge's Est., 289 Pa. 331.

The circumstances and declarations concerning the intention of persons concerning merger were admitted in the following cases: Continental Title & Trust Co. v. Devlin, 209 Pa. 380; Vetter v. Vetter, 13 Pa. Superior Ct. 584.

There was no termination of Pusey's leasehold because no merger in the fee which he acquired can take place when it adversely affects a third person's interests: Dougherty v. Jack, 5 Watts 456; Moore v. Luce, 29 Pa. 260; Hartzell's Est., 188 Pa. 384; Hessel v. Johnson, 129 Pa. 173; Nevidalsky v. Strohl, 23 Lack. Jurist 200.

Even if there had been a merger, clause 15 does not in its terms apply to such a voluntary termination: Nevidalsky v. Strohl, 23 Lack. Jurist 200.

Obviously a merger cannot be said to be an expiration of a lease; expiration means the end of the term as originally provided by the contract or lease: Pringle v. Wilson, 24 L. R. A., N. S. 1090, 1093, 104 Pac. 316.

It has been held that the period or term of a lease is of the essence since it is a limitation of the estate: Denniston v. Haddock, 200 Pa. 426; Keiser v. Real Est. Co., 43 Pa. Superior Ct. 130.

*George Wharton Pepper,* with him *Wallace C. Stilz* and *Lester B. Johnson,* for appellee.—In the first place, there is nothing in the record to establish that appellant ever surrendered anything. She went into the transaction with nothing, a perfect stranger to the transaction as far as the record discloses, and came out, according to her contention, with a lease for a firm term of twenty years without rent.

We find appellant's argument consists in large part of a discussion of general principles of the law of merger, which have but little application to the case at bar where the parties have endeavored by contract to limit, fix and determine their rights.

No one claims that the termination of Pusey's lease by its merger into the fee would, in itself, terminate a lease between Pusey and Stern. The event,—the acquisition of the fee and the consequent termination of Pusey's lease,—could not in itself have any legal effect or bearing upon a lease between Pusey and Stearn.

The principle that the operation of the law of merger is largely a matter of intention is good, and is sustained by the cases cited by appellants, and by many others. But add to that principle the equally well established corollary that it will not be presumed that the person in whom the two estates vested intended to do that which would be against his interest: Dougherty v. Jack, 5 Watts 456; Waldron v. Wahl, 286 Pa. 237.

A recent illustration of the sense in which we ordinarily use the word "tenancy" is found in the opinion of Justice WALLING in Burke's Est., 291 Pa. 223, 226. He says "To establish a tenancy," when he is speaking of a relationship between a landlord and tenant, as distinguished from an interest in the fee.

Our courts, in Newell's App., 100 Pa. 513; Knerr v. Bradley, 105 Pa. 190, and in Master v. Roberts, 244 Pa. 342, have held that the tenancy ceases the moment a tenant exercises an option to purchase the reversion; a fortiori, the tenancy ceases where, as here, the reversion was actually conveyed to the tenant.

If there be these differences in the particular words used, then there is no room for the application of the rule ejusdem generis, and the remaining words must be given their natural meaning: McCune v. Berry, 237 Pa. 572; Com. v. Dickert, 195 Pa. 234; Whelen's App., 70 Pa. 410; Kintzer's Est., 26 Pa. Dist. R. 936.

OPINION BY MR. JUSTICE SIMPSON, January 7, 1929:

In a proceeding under the Act of April 20, 1905, P. L. 239, appellee, as grantee of a sheriff's vendee, sought to recover from appellant, as tenant in possession, the property which his vendor had purchased at a sheriff's sale on the foreclosure of a mortgage. Appellant held and claimed to retain possession by virtue of a lease with a former owner of the property, made before the mortgage was executed, the term of which lease had not expired, and under which she had been in continuous possession from the time of its execution. She appeals from the judgment against her, which, admittedly, would have been in her favor, but for the court's construction of the hereinafter quoted provision in her lease. In our opinion the judgment was erroneous.

By virtue of two leases from George H. Earle, Jr., one of which still had over thirteen years to run, appellant and those with whom she was associated, were in possession of two properties which adjoined a large hotel belonging to Arthur W. Pusey. Desiring to control the property covered by the two leases, he obtained from Earle another lease on it, which contained an option of purchase, the enforceability of this lease being conditioned, however, upon Pusey's obtaining a cancellation of the two leases in which appellant was interested. He

thereupon entered into negotiations with her, which resulted in a new lease by him to her, in consideration of her cancelling or causing to be cancelled the existing leases. By the new lease, which is the one under which she now claims, she is given the right to occupy the property, the subject of this litigation, for a term which does not expire until December 31, 1940. This property was less than three-tenths the size of that covered by the leases which were cancelled. The result of the arrangement referred to, was that appellant got the portion she needed most, at a greatly reduced rent and for a longer term, and Pusey obtained a large lot on which, if he exercised his option to purchase, he could extend his hotel property. Later on he did exercise it, obtained a deed from Earle for the entire tract, and appellant paid to him the rent agreed upon in the lease from him to her. Pusey lived nearly seven years after this lease was executed, and continuously, during all that time, recognized her right under the lease. Nearly two years before his death, he conveyed the property to a straw-man, who executed the mortgage under foreclosure of which appellee claims, and then reconveyed the property to Pusey. No inquiry was ever made by or for the mortgagee as to the terms under which appellant was in possession of the property. After Pusey's death his executors and trustees conveyed the whole tract to appellee, subject to the mortgage. A little over one month thereafter, interest on it became due, which apparently appellee did not pay, for the mortgage was foreclosed, the property sold and conveyed by the sheriff, whose vendee, on the same day he obtained the sheriff's deed, conveyed it back to appellee. It does not appear whether the mortgage was foreclosed because of appellee's neglect or active connivance; but it is clear that, but for the proceedings just recited, appellant's right of continued possession could not have been disturbed.

The lease from Pusey to appellant was executed by Pusey's agents and appellant, and is approved in writ-

ing by Pusey. It gives to appellant a "term of twenty years from the first day of January, A. D. 1921." The provision in it, upon which the court below relied to end her tenancy, and which is appellee's sole dependence in this court, is as follows: "15. If the lessors' principal is lessee of the demised premises or of the building of which the said premises are a part, then lessee agrees that lessee takes possession as subtenant and agrees to be bound by the terms, conditions, covenants and agreements of the said principal's tenancy whatever the same may be, and in case the principal's tenancy shall terminate either by expiration, forfeiture or otherwise, then this lease shall thereupon immediately terminate, and the lessee hereby agrees thereupon to give immediate possession, and lessee further agrees to waive, and hereby does waive, any and all claims for damages or otherwise, by reason of such other terms, conditions, covenants and agreements and their enforcement and for such termination."

Appellee's contention is, and the court below so decided, that since lessors' principal (Pusey) was at that time a "lessee [of Earle] of the demised premises," and since also his tenancy necessarily terminated when he purchased the property from Earle, appellant's tenancy likewise terminated at that time, because of the provision that if his "tenancy shall terminate either by expiration, forfeiture or otherwise, then this lease [that is the one on which appellant relies here] shall thereupon immediately terminate." Perhaps nothing could better illustrate the error of that conclusion, than the fact that the very purpose of making the lease to appellant was that Pusey's lease from Earle should become effective, and he should then have the right to buy the property from Earle, and thereby terminate his, Pusey's, tenancy; and hence, if, in that event, the lease to appellant was also terminated, as appellee claims, then it was necessarily made for the express purpose of being self-destructive. It ought not to be necessary to say that no such

interpretation can be approved, unless it is practically impossible to reach any other. Instead of this being so, we are of opinion that it is, itself, an impossible conclusion.

The error of the court below consisted in wresting the words relied on from their subject-matter and obvious purpose. It is axiomatic that this can never be done; all contracts must be construed with reference to their subject-matter and obvious purpose, and, however general the language may be, their scope and effect are necessarily limited and controlled thereby: ex antecedentibus et consequentibus fit optima interpretatio; verba generalia restringuntur ad habilitatem rei vel personam; Codding v. Wood, 112 Pa. 371; Smith's Est., 210 Pa. 604; Silverthorn v. Silverthorn, 276 Pa. 579. In Com. v. Budd Wheel Co., 290 Pa. 380, where an earlier opinion of this court was being construed, we said that "controlling effect must be given to the subject-matter being considered when the language is used." The same principle is applicable wherever the meaning of words, oral or written, is being considered, for only thus can it be known what the parties intended by their contract. Thus tested, the scope of paragraph 15 of the agreement, above quoted, is not difficult of determination.

At the time of making the lease relied on by appellant, Pusey was himself a tenant of Earle, and the continued binding effect of his lease to her of course depended on the terms of his lease from Earle, and he, Pusey, might become liable to her if, without fault on her part, her tenancy was destroyed by the termination of his lease from Earle. To protect him against this possibility, appellant agreed "to be bound by the terms, conditions, covenants and agreements [of his lease from Earle] whatever the same may be," and added the clause under consideration that, in case his "tenancy shall terminate either by expiration, forfeiture or otherwise," then the lease made to her "shall thereupon immediately terminate," and, in that event, she waived "any and all

claims for damages or otherwise, by reason of such other terms, conditions, covenants and agreements and their enforcement and for such termination." It is clear that, by this paragraph, appellant simply agreed to submit her leasehold, then being acquired, to the "terms, conditions, covenants and agreements" of Pusey's lease from Earle, and to relieve the former from liability, by reason of *Earle's enforcement* of such "terms, conditions, covenants and agreements," if that "enforcement" necessarily resulted in the "termination" of appellant's tenancy also. Obviously this was simply a clause intended to protect Pusey from liability to her, if his lease from Earle was properly terminated by the latter, and was not intended to release Pusey, or those claiming under him, from fulfilling the terms and conditions of his lease to appellant, nor to defeat the tenancy thereby created, unless there was a breach of the lease from Earle to Pusey, in which event, if the former, or those claiming under or through him, determined Pusey's tenancy because of that breach, appellant's tenancy would likewise end. There was no such determination of the lease from Earle to Pusey, however; Pusey's purchase of the property was a matter contemplated in the lease, and not a violation of it. Appellee's claim, carried to its logical conclusion, would have justified Pusey in buying from Earle the day after his lease to appellant, and thereafter excluding her from possession; or of voluntarily cancelling his lease with Earle and escaping all liability. This is unsupposable, for, to so hold under the circumstances here appearing, would result not in protecting Pusey from liability, but in enabling him to wrong appellant, to whom presumptively and so far as appears, he executed the lease in good faith. A party may contract for indemnity against the results flowing from his own acts; but "no inference from words of general import can establish it"; on the contrary, "the intent of both parties to that effect [must] be made apparent by clear, precise and unequivocal language":

Weaver v. Griffith, 210 Pa. 13; Perry v. Payne, 217 Pa. 252. Here the intendment is all the other way.

If it be suggested that Pusey's right to purchase the property from Earle was one of the covenants contained in the lease between them, and since by that act the tenancy of Pusey terminated in one of the ways specified in his lease from Earle, appellant's did also, because of the word "otherwise" as used in section 15, then it is answered that Pusey needed no protection from the effect of his own voluntary act of purchase, and hence, under the cases last cited, the provision invoked does not aid appellee, even if "otherwise" is not construed ejusdem generis with "expiration" and "forfeiture"—a possibility we need not consider. Perhaps it was unnecessary to have answered the argument suggested by this paragraph of the opinion, since neither the court below, nor any of the counsel in the case, have presented it for our consideration. We have preferred to notice it, however, in order to avoid its possible presentation in the future.

It follows from what has been said, that the judgment below must be reversed because neither the deed from Earle to Pusey, nor the foreclosure of the mortgage and the sheriff's sale and deed following it, arose "by reason of [the *enforcement* of any of the] terms, conditions, covenants and agreements" in the lease from Earle to Pusey, and hence did not result in the termination of appellant's leasehold interest.

The judgment of the court below is reversed, and the record is remitted with a direction to enter judgment for appellant.