# Rea and Derick, Inc. v. Lancaster Shopping Center, Inc.

*Appel, Ranck, Herr & Appel,* for petitioner.

*Zimmerman, Zimmerman, Myers & Gibbel,* for respondent.

BROWN, J., October 21, 1966.—This proceeding was instituted by Rea & Derick, Inc., filing its petition for declaratory judgment under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, 12 PS §831 et seq.

The subject matter of this case is in the construction of a lease between Rea & Derick, Inc. and Lancaster Shopping Center, Inc. dated January 12, 1957. Defendant in this case was formerly Lancaster Shopping Center, Inc., but now, by stipulation of counsel duly filed in the prothonotary's office, the caption of this suit was amended, and defendant is now known as Lancaster Shopping Center Associates, a joint venture consisting of Max J. Levine and Ann Levine, his

wife, and Pennsylvania Plazas, Inc., a Pennsylvania corporation (Associates), who are the successors to Lancaster Shopping Center, Inc., which has been dissolved. Under this lease, Rea & Derick, Inc. is operating a drug store in the Lancaster Shopping Center known as drug store no. 1. The problem presented is whether or not Rea & Derick is prohibited by this lease from operating a second drug store, known as drug store no. 2, on land belonging to Acme Markets, Inc., about 1,000 feet from the Lancaster Shopping Center location.

Defendant, Associates, filed its answer and new matter and prayed that the court restrain Rea & Derick, Inc. from opening and operating the second drug store.

Rea & Derick, Inc. replied to the new matter and moved for judgment on the pleadings. This court, in its opinion of May 20, 1966, determined that this was a proper case to be decided under the Uniform Declaratory Judgments Act. However, as there were certain factual matters in dispute, the court directed that a hearing be held.

It seems appropriate to note that in its prior opinion, this court stated the pleadings indicated, according to the reply of plaintiff to new matter of defendant, that plaintiff was contending that the opening of drug store no. 2 on land belonging to Acme Markets, Inc., was in contemplation by the parties when the lease between plaintiff and Lancaster Shopping Center, Inc., now Associates, was signed, which required testimony to determine this controversy. The court further stated in that opinion that there were additional factual situations to be resolved, such as the right of defendant to offer testimony that the opening of drug store no. 2 could conceivably divert trade or business from drug store no. 1, thereby reducing the opportunity of defendant to benefit by the additional rental from

the gross sales in drug store no. 1, as provided in the lease between the parties, and the further possibility of loss of income from other stores leased by defendant to the tenants by the diminution of plaintiff's business in drug store no. 1. Also discussed in the court's prior opinion was the covenant of defendant not to lease any other space in its shopping center to any other tenant for the sale of proprietary medicines, with the exception of the sale of proprietary medicines which do not require the presence of a registered pharmacist. The court further stated in its prior opinion that it was concerned about the averments of defendant that plaintiff and Acme Markets, Inc., the latter being the operator of the new shopping center, had entered into a common plan, scheme and conspiracy to erect and operate a drug store and supermarket adjacent to and in competition with the retail operations conducted by defendant by reason of the fact that the outstanding corporate shares of plaintiff were acquired by Acme Markets, Inc. in September, 1964. For the above mentioned reasons, the court in its prior opinion directed testimony to be taken to resolve these problems.

Since the court in its former opinion discussed fully the reasons why it felt that it had jurisdiction over the subject matter and the parties and that the controversy in this case is proper for consideration under the Pennsylvania Uniform Declaratory Judgments Act, it will serve no useful purpose to further discuss this problem. Reference to this former opinion will fully disclose the court's position with regard to this situation.

This testimony was duly taken and developed the following facts. Gordon H. Griffith, president of plaintiff corporation, testified that the opening of a drug store in location no. 2 would, for the time being or for a short time, draw business from drug store no. 1,

the distance between both drug stores being about 1,000 feet, and that there would be a decrease in business in drug store no. 1 for the first year or two and that this decrease would be about 15 percent during this one or two years. He further stated that because of the tremendous growth in the "Golden Triangle" where these two stores are located, the original loss would be made up in the time indicated.

As opposed to this, Roger Smith, a witness for defendant, whose work entails the development, leasing, financing and merchandising of shopping center complexes around the country, testified that the loss to drug store no. 1 by the operation of drug store no. 2 would approximate a 50 percent diversion and that this loss would probably be permanent. This witness further testified that he never saw or heard of, or personally observed an instance of where two stores of the same chain were established and in business within 1,000 feet, but that he had seen it within two miles of the suburban areas and suburban shopping centers. He further testified that two such stores are seen outside of the shopping centers between two and one-half to five miles away, but generally it is outside the existing trading area that a shopping center is developing for a drug business. Obviously, the proposed second drug store would be within the shopping center trading area of drug store no. 1. The witness Smith further testified that he has been in the Lancaster area for the past 10 years from time to time and knows the shopping area involved and that the new store would divert business, although he said he made no special study of the present case. He did say, however, he had never seen or observed in his profession or in his travels around the United States observing building constructions and developing shopping centers any instance where a retail drug firm competed with its own unit as close as the present planned drug store.

Plaintiff's witness, Gordon H. Griffith, also stated that approximately at the time of the merger of Rea & Derick, Inc. with Acme Markets, Inc., he found out that a competitive drug firm was negotiating for a drug store of about 15,300 square feet. He said it concerned him personally, and at a later date he understood that because of the merger of Acme Markets, Inc. and Rea & Derick, Inc., the other tenant that was negotiating for the drug store withdrew from negotiating the lease, and he felt that Rea & Derick, Inc. should consider going in this location with a smaller store to protect the Rea & Derick no. 1 store because he felt it would be better to have two Rea & Derick drug stores than to have one Rea & Derick drug store and one of a larger competitive drug chain.

The testimony of Daniel H. Alper, Assistant Controller of Food Fair Properties, who as such had the records of the leases of Associates, testified that the minimum rent plus percentage for drug store no. 1 for the five year period beginning 1961 through 1965 showed a steady increase of rentals, so that in the year ended January 31, 1966, sales reported were $1,079,-600, with a minimum rent of $18,050 and a percentage rent of $20,600, or, a total rent of $38,650, for the last recorded year. If the rentals for the year ending January 31, 1966, are taken as a criterion and there was a 50 percent loss in business by the erection of the new drug store based on this rental, the decrease of 50 percent would amount to approximately $15,000 and a decrease of 15 percent conceded for a two year period by plaintiff would be between $5,000 and $6,000 a year in rentals to defendant.

There was testimony by plaintiff's witnesses that Rea & Derick, Inc. is a Pennsylvania corporation which is wholly owned by Rea & Derick, Inc., a Delaware corporation, which in turn is wholly owned by Acme Markets, Inc. During the year 1965, Acme Markets, Inc.

started the construction of a small shopping center south of the Lancaster Shopping Center, where the present drug store no. 1 is located. Then, on September 7, 1965, Rea & Derick, Inc. entered into a lease with Acme Markets, Inc. to operate a drug store in the proposed new shopping center. While the testimony of Gordon H. Griffith, plaintiff's witness, was to the effect that Acme Markets, Inc. in other locations had no influence on the control of drug store locations of plaintiff, this would seem to indicate that were it not for the fact that plaintiff was a wholly owned subsidiary of Acme Markets, Inc., there would be no lease between them and that the independent competitor would be occupying drug store no. 2 instead of plaintiff making an effort to do so. It is certainly questionable whether Acme Markets, Inc. would permit a competing drug store in their new shopping center when it owns all of the stock of Rea & Derick, Inc. in a drug store 1,000 feet away.

There was also testimony offered by Associates that when the lease in question was being negotiated, it was understood that there would be no competing drug firm in the shopping center, but it is not clear to the court whether this includes the so-called Golden Triangle where both shopping centers are now located, or whether this was confined to the shopping center of Associates. Furthermore, there was detailed testimony on the part of Rea & Derick by their former attorney, Honorable Michael Kivko, that it was never in the contemplation of the parties that Rea & Derick would be restricted in the opening of another drug store at any place or location. The court feels that the testimony with respect to this problem is not relevant because, as hereinafter explained, the court feels there is no ambiguity in the lease which would warrant the introduction of testimony concerning the intention of the parties at the time the lease was entered into. See Consolidated Tile and Slate Company v. Fox, 410 Pa. 336.

In the opinion of the court, the lease speaks for itself, and a clear interpretation thereof indicates that the parties made mutual covenants to insure themselves of the maximum benefits that can be derived therefrom. In the present case we have an express covenant on the part of the landlord not to lease any portion of the shopping center to another drug store, and the reciprocal covenant by the tenant to operate its drug store in the prescribed manner and not divert elsewhere any trade or business which would ordinarily be transacted by the tenant in the leased premises. In effect, as stated in Associates' brief, the parties hereto are engaged in a joint venture for their mutual benefit, and the court feels that a substantial diversion of business with consequent financial loss to Associates would occur if drug store no. 2 is opened and, even conceding that this business might be regained in one or two years, this would be regained only by the normal increase of business in both shopping centers, and Associates would have the benefit of that normal increase in any event.

### FINDINGS OF FACT

1. Rea & Derick, Inc., plaintiff, is a Pennsylvania corporation, which is wholly owned by Rea & Derick, Inc., a Delaware corporation, which in turn is wholly owned by Acme Markets, Inc. The principal place of business of plaintiff is at 5th and Orange Streets, Northumberland, Pa.

2. Lancaster Shopping Center, Inc., defendant, by reason of dissolution and transfers, is now Lancaster Shopping Center Associates, consisting of Max J. Levine and Ann, his wife, and Pennsylvania Plazas, Inc., a subsidiary of Food Fair Properties, Inc. The address is John F. Kennedy Boulevard, Philadelphia, Pa. The present ownership is substantially the same as the initial ownership of Lancaster Shopping Center, Inc., and Lancaster Shopping Center Associates are

successors in interest to Lancaster Shopping Center, Inc.

3. On or about January 12, 1957, plaintiff and defendant entered into a lease for premises known as drug store no. 1 herein, and exhibit C. P. 2 is a true copy of said lease.

4. Said lease has been duly assigned to Lancaster Shopping Center Associates as lessor.

5. Drug store no. 1, occupied and operated by Rea & Derick, Inc., plaintiff, since September, 1957, is part of a shopping center complex owned and leased by Lancaster Shopping Center Associates.

6. A drug store is deemed to be essential to a shopping center and the total operation thereof.

7. Rea & Derick, Inc., plaintiff, has an excellent reputation in this area, is well received, and operates a very successful store in drug store no. 1.

8. The lease between the parties provides for a realistic base rental of $18,050 per year, plus a percentage of gross sales. For year ending January 31, 1966, the total rental was $38,650, represented by $18,050 base rent, plus $20,600 percentage rent based on a gross business of $1,079,600.

9. Rea & Derick, Inc.'s gross sales have been increasing annually.

10. Acme Markets, Inc., purchased certain lands in Manheim Township, Lancaster County, immediately adjacent on the south to lands of the Lancaster Shopping Center, and have erected thereon buildings for a large supermarket, a State liquor store, a cleaning establishment, and drug store no. 2.

11. Drug store no. 2 is approximately 1,000 feet distant from drug store no. 1.

12. Both shopping centers are located in a desirable shopping area having access to the same arterial highways and drawing on the same market area.

13. On or about September 7, 1965, Acme Markets,

Inc., the owner of Rea & Derick, Inc., entered into a lease with Rea & Derick, Inc., for premises known as drug store no. 2.

14. Exhibit C. P. 1 is a true and correct copy of that lease.

15. If Rea & Derick, Inc., plaintiff, were to operate drug store no. 2, it would divert business from its operation of drug store no. 1.

16. The lease between Rea & Derick, Inc. and Lancaster Shopping Center provides, inter alia, that the shopping center shall not lease any space therein for another drug store, and that Rea & Derick, Inc. should not divert business from drug store no. 1.

17. Rea & Derick, Inc. plainly states that it leased drug store no. 2 in order to protect drug store no. 1 from competition with an alien drug store not owned by Acme Markets, Inc.

18. Under such arrangement, Rea & Derick, Inc. could not lose, since sales from both locations would inure to its benefit, whereas if a competitive store were to operate drug store no. 2, Rea & Derick would do all in its power to retain its business in drug store no. 1 and increase it.

19. If Rea & Derick is permitted to operate drug store no. 2, it will not only divert business from drug store no. 1, but Rea & Derick would have no incentive to make either of its operations competitive.

## DISCUSSION

It seems clear to the court that when the parties hereto entered into the lease in question, they carefully and fully negotiated all the terms thereof, as witnessed by the interlineations in the lease and the added typed portions thereof. Obviously, on January 12, 1957, the date of the lease, there was no indication that a competing shopping center would be erected next to the shopping center of Associates. Clearly, as indicated by

the court at the hearing, it would have been much better for the parties to have provided in the lease a more definitive restrictive clause than the "diversion of business" clause, but in the present case we have an express covenant on the part of the landlord not to lease any portions of the shopping center to another drug store, and a reciprocal covenant by the tenant to operate its drug store in a prescribed manner and not to divert elsewhere any trade or business which would ordinarily be transacted by the tenant in the leased premises. If we are to adopt the tenant's interpretation of this covenant we render the "divert elsewhere" clause completely meaningless.

In examining the cases in Pennsylvania and elsewhere apposite to the problem involved in this case we find the case of the Great A. & P. Tea Co. v. Bailey, 421 Pa. 540, decided by the Pennsylvania Supreme Court on May 26, 1966. In that case, the Supreme Court, by a four to three decision, refused to apply against the landlord a restrictive provision not to lease for competitive purposes against his tenant, land which the landlord had acquired after it had leased to tenant. The decision was based on the narrow ground that it was a land use restriction which is very strictly construed in Pennsylvania. The present case does not involve land use, but only the activities of the tenant.

The restriction to not divert elsewhere any trade, etc. does not impose an unreasonable restraint of trade. Plaintiff has asserted that if the construction placed upon paragraph 22 of the lease by defendant landlord is adopted, such would constitute a restraint of trade. This is not the case. Restatement, Contracts §516, states: "The following bargains do not impose unreasonable restraint of trade unless effecting, or forming part of a plan to effect, a monopoly: ... (b) A bargain by the buyer or lessee of property or of a business not to use it in competition with or to the injury of the seller or lessor".

The case of Cities Service Oil Co. v. Union Real Estate Co., 36 D. & C. 2d 1 (1964), is one which approximates the facts in the present case, except that in the Cities Service case it was the landlord who was restrained from permitting competitive services in a shopping center when it had agreed in its lease not to do so. The court held that restrictive covenants, although in restraint of trade, are enforceable if reasonable. See also: Ross v. Houck, 184 Pa. Superior Ct. 448 (1957); Harris Calorific Company v. Marra, 345 Pa. 464 (1942); Histand v. Nagorski, 37 D. & C. 2d 157 (1964).

Under a percentage lease contract, as in the present case, where there is a restriction upon lessee expressly imposed to the effect that he will not divert elsewhere any trade, commerce or business which ordinarily would be transacted by him in or from the demised premises, such should be interpreted to mean that the lessee would not build and operate a store only 1,000 feet from his first place of business. In Stop & Shop, Inc. v. A. John Ganem, 347 Mass. 697, 706, 200 N. E. 2d 248, 253, where the issue was as to whether in a percentage lease agreement an implied covenant not to compete existed, the court ruling that no such covenant would be implied upon the facts, did point out that: "We assume, without deciding, that had the lessee opened a competing store in the same location as the demised premises, that is adjacent, or nearly so, there might have been a basis for requiring it to regard the lessors' interest under the percentage rent provision in its conduct of the two stores. In such a case the lessee's acts would affirm the business advantage of remaining at the very place at which it had committed itself as tenant of the lessors".

In Seggebruch v. Stosor, 309 Ill. App. 385, 33 N. E. 2d 159, defendant leased a gas station from plaintiff, no minimum rental, but one and one-fourth cents' rent on every gallon of gas sold. Defendant then built a

gas station across the street, diminishing plaintiff's rent considerably. The court found an implied covenant not to build a new station across the street which would thereby deprive the owner of due and just rent.

In Carter v. Adler, 138 Cal. App. 2d 63, 291 P. 2d 111, a lessor attempted to put his tenant out of business by building a competing shopping center next to his. The court cited Lloyd v. Murphy, 25 Cal. 2d 48, 153 P. 2d 47, for the propositions that a court takes judicial notice that the erection of a similar store in the same area will reduce the original store's sales. It then continues by citing Goldberg 168-05 Corporation v. Levy, 170 N. Y. Misc. 292, 9 N. Y. S. 2d 304, 305, 306, to the effect that if a store under such a lease would divert the business to another "Such conduct would be in direct violation of the covenant of good faith and fair dealing which exists in every contract". The court then interprets Cissna Loan Co. v. Baron, 149 Wash. 386, 270 Pac. 1022, a similar case dealing with a percentage lease contract, as meaning "Neither lessee nor lessor can avoid liability for damages where they are operating under a percentage rental lease and either conducts a competing business on adjacent premises, causing a reduction of the gross receipts on the demised premises".

Although the courts seem fairly split whether to imply a covenant not to compete in percentage lease contracts, they do impose an equitable obligation of fair dealing on the parties for both their benefits. Therefore, the reasoning presented in the foregoing cases is persuasive to a court in giving an interpretation to the covenant in the present case. As pointed out in Camden Safe Deposit & Trust Co. v. Eavenson, 295 Pa. 357 (1929), words of a lease must be construed with reference to the subject matter and the obvious purpose. The subject matter in the present case is a percentage lease for the benefit of lessor with other restrictions in the lease for the benefit of lessee. The obvious purpose

of the restrictive covenant in question imposed upon lessee is to prevent him from depriving lessor of profits under the lease, and such profits would be diminished in the rationale of the above cited cases if lessee were allowed to open a competing business so nearby.

Finally, the fact that there is only a contingent percentage clause in the lease for rental for drug store no. 2 is a significant factor to the court. This contingent provision for percentage rental only arises in a lease year during which a Pennsylvania State Liquor Control Board retail liquor store is open for business in the area of drug store no. 2 for six months or more. In the event there would be no such liquor store open for business in said area, it takes little imagination to envisage a situation where, because of the high percentage rent in drug store no. 1, it would be to the advantage of drug store no. 2 to substantially increase its business to the detriment of drug store no. 1, because drug store no. 2 would be paying a flat rental at such times, and if business were diverted from drug store no. 1, a substantial loss on the percentage rental could occur to defendant. This diversion could occur even without any conscious effort on the part of drug store no. 2 to bring it about. In fact, there is an admission on the part of plaintiff that there would be a diversion for at least one or two years and, of course, a much greater diversion is indicated by the witness Smith for defendant.

### Conclusions of Law

1. The court has jurisdiction over the subject matter and the parties.

2. The controversy is proper for consideration under the Pennsylvania Uniform Declaratory Judgments Act.

3. Reasonable restrictive covenants are enforceable.

4. The covenant not to divert elsewhere business which would ordinarily be transacted in drug store no. 1 is reasonable.

5. Under the facts herein, as established to the

court's satisfaction, the operation of drug store no. 2 by Rea & Derick, Inc. would violate such covenant not to divert.

## DECREE NISI

And now, October 21, 1966, it is ordered, adjudged and decreed:

1. The subject matter of this action is within the jurisdiction of the Court under section 2 of the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, and its amendments, 12 PS §832, as the dispute concerns the construction of a written lease.

2. For the reasons stated in the foregoing opinion, the prayer of petitioner for declaratory judgment is hereby refused insofar as it requests a judicial declaration that petitioner (plaintiff) Rea & Derick, Inc., under the terms and provisions of the lease dated January 12, 1957, between it and Lancaster Shopping Center, Inc., now Lancaster Shopping Center Associates, defendant, is entitled to open and operate a second drug store on land belonging to Acme Markets, Inc., located between Oregon and Lititz Pikes, in Manheim Township, Lancaster County, Pa., without committing a breach of the lease of January 12, 1957, between petitioner (plaintiff) and defendant, and the opening of such a drug store would constitute a breach of said lease between plaintiff and defendant on the part of plaintiff.

3. The costs of this proceeding shall be paid by petitioner, Rea & Derick, Inc.

4. The prothonotary shall serve copies of this decree nisi and the accompanying opinion forthwith upon all parties in interest and counsel of record, and unless exceptions are filed within 20 days after such notice, this decree shall be entered as of course by the prothonotary as a final decree, and the decree shall be recorded in the Recorder's Office of Lancaster County as required by law.