393 A.2d 1053

Raymond BUGGY, an Individual, Appellant,

v.

CONEY ISLAND RESTAURANT, INC., a
corporation, Appellee.

Superior Court of Pennsylvania.

Argued Nov. 14, 1977.

Decided Nov. 8, 1978.

Myron H. Tomb, Jr., Indiana, for appellant.

Daniel V. Delaney, Indiana, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

 This is an appeal from an order sustaining preliminary objections in the nature of a demurrer.[1]

 A demurrer admits all facts well-pleaded in the complaint. *Satchell v. Ins. Placement Fac. of Pa.*, 241 Pa.Super. 287, 361 A.2d 375 (1976). An examination of the complaint here discloses the following well-pleaded facts.

1. Strictly speaking, the order is interlocutory, and the appeal might therefore be quashed. The order provided that "the plaintiff [appellant] is given twenty (20) days . . . to amend his complaint in compliance with this opinion, or suffer a dismissal of this action." Record at 38(a). It does not appear in the record before us that an order of dismissal has in fact ever been entered. However, appellant says in his brief that he "cannot comply" with the order. Appellant's Brief at 1. In the interests of judicial economy, we shall therefore treat the case as though an order of dismissal had been entered, and the appeal taken from that order.

M. Bennett and Sons, a Pennsylvania corporation, owned premises 11 South Carpenter Avenue, Indiana, Pennsylvania. On January 28, 1974, Bennett leased the premises for seven years to appellee, Coney Island Restaurant, Inc. A copy of the lease is Exhibit A of the complaint. The lease provided that Coney Island could use the premises only as a restaurant. Paragraph 14 of the lease provided that "Indiana Vending Company, a division of M. Bennett and Sons," was "granted the sole and exclusive right to place, maintain, and operate all vending, music, and amusement equipment and devices" in the leased premises, and further provided that Coney Island agreed "not to enter into any agreement with any other vending company" and "not to install its own vending, music or amusement equipment . . ." Record at 8a.

On June 19, 1974, Bennett sold certain "used vending machines and spare parts" to appellant, Raymond Buggy, a resident of Indiana County. A copy of the agreement of sale is Exhibit B of the complaint. The vending machines sold to Buggy are identified in a schedule attached to the agreement of sale; included in the schedule are a "Tennis Tourney TV Game" and two juke boxes, identified as being "on location" in the Coney Island Restaurant. Record at 15a. Paragraph 5 of the agreement of sale provides in part as follows:

It is understood that the Seller [Bennett] is the owner of the real property in which the Coney Island Restaurant and Pizza House are located and that the leases between the Seller and the tenants in said location contain a clause giving Indiana Vending Company, a division of the Seller, the sole and exclusive right to maintain vending equipment in said premises for the term of said leases. To the extent that the Seller is legally able to assign its rights under said clauses of said leases for and during the term of said leases, the Seller hereby assigns, without representation or warranty, all rights and responsibilities and Buyer hereby accepts all rights and responsibilities thereunder, with respect to music and amusement vending

machines in said premises. It is understood and agreed that the Buyer shall be responsible for the expense of enforcement of any claim or claims against third party as the result of any rights assigned by the Seller to the Buyer under this provision. Record at 13a.

From June 19, 1974, until September 2, 1976, Buggy maintained and operated the vending machines in Coney Island Restaurant. Paragraph 5 of Complaint, Record at 3a. On September 2, however, Coney Island instructed Buggy to remove the machines. *Id.*

In Buggy's view, this instruction represented a breach by Coney Island of the provisions of paragraph 14 of Coney Island's lease from Bennett, that Coney Island was not to enter into any agreement with any other vending company and was not to install its own vending equipment.[2] Accordingly, on September 15, Buggy filed a complaint against Coney Island, seeking damages for "sustained expenses, loss of profits and other damages in excess of $10,000." Paragraph 7 of Complaint, Record at 3a.

Coney Island's demurrer to the complaint is in four paragraphs. Paragraph 1 states that "[t]he Complaint does not set forth sufficiently any contractual relations between [Buggy] and [Coney Island] . . . and does not sufficiently set forth any facts showing whereby [Coney Island] wrongfully directed [Buggy] to remove the . . . vending machines . . .." Record at 23a. Paragraph 2 says that the "Complaint [is] insufficient because the lease [between Bennett and Coney Island] . . . require[s] that [the] vending machine operations be performed by . . . Bennett . . . through its subsidiary [Indiana Vending]; thus creating a unique and personal contractual ar-

---

2. Paragraph 16 of the complaint does not specify exactly what the breach consisted of. For example, there is no allegation that Coney Island brought in a new vending machine operator when it excluded Buggy. Presumably the intent was to plead that the breach was the removal of Buggy himself, since paragraph 14 of the lease creates a "right to place, maintain, and operate all vending, music and amusement equipment and devises . . .." We do not consider this lack of clarity further since appellee neither raised it as an issue in the demurrer or in its subsequent brief to this court.

rangement between [Coney Island] and [Bennett]." *Id.*
Paragraph 3 says that "[t]he Complaint is insufficient in
that it does not set forth a breach of contract between the
parties to the lease [*i. e.*, Bennett and Coney Island] . .
because . . . when . . . Indiana Vending . .
relinquished its right to operate said vending equipment
. . . [Coney Island] was then free to contract for such
services with any individual or company of its desire; this
being so, because . . . The vending operation arrange-
ment of [Bennett] and [Coney Island] did not contemplate
assignment to another, but was exclusively given by [Coney
Island] to [Bennett]." Record at 24a. Paragraph 4 says
that the "Complaint does not properly set forth that [Buggy]
did or could perform . . . [as contemplated by the
lease between Bennett and Coney Island] because of the
unique and personal nature of their relationship as landlord
and tenant." *Id.*

We are obliged to say that we find the demurrer difficult
to understand. Paragraphs 1 and 4 seem to add nothing to
Paragraphs 2 and 3; also, we are unclear about the intended
difference between paragraphs 2 and 3, each of which seems
to insist that the relationship between Bennett and Coney
Island was unique.

The record includes a copy of the brief that Coney Island
filed with the lower court. Record at 32a–36a. From the
brief, it appears that the demurrer was intended to state
only a single argument against the complaint, which may be
gathered from paragraph 3 of the demurrer and summarized
as follows: When Bennett leased the restaurant premises to
Coney Island, Coney Island "acquired an exclusive right to
possession" of the premises for the term of the lease. Rec-
ord at 32a. Paragraph 14 of the lease, granting Indiana
Vending "the sole and exclusive right to place, maintain, and
operate all vending, music and amusement equipment" on
the premises, is to be read as "[g]ranting the landlord [*i. e.*,
Bennett] the exclusive right to place vending machines in
the premises while the tenant [*i. e.*, Coney Island] was in

possession." *Id.* This exclusive right "was in the nature of a license agreement given by the tenant to the landlord . . ., not a lease-back or other arrangement giving up the right to possession." *Id.* As a license agreement, it was "revocable at the will of the licensor [*i. e.*, Coney Island]," Record at 33a; but even if not revocable at will, it was terminated by operation of law when Bennett attempted to assign to Buggy the right to maintain and operate the vending machines. *Id.* The license did not become irrevocable on the basis of estoppel because "[Buggy] cannot show that [Coney Island] gave to him any reason to reasonably rely on a promise to allow him to conduct the vending machine business." Record at 34a. Finally, "if the court should find an irrevocable license was ever created between the parties . . ., the court should also find, as a matter of law, that the purpose for the rulings that such license cannot be terminated at the will of the licensor has no applicability in the case," since "[Buggy] has not expended a large sum of money in reliance upon any promises of [Coney Island]." Record at 35a.

The lower court in its opinion sustaining the demurrer seems to have accepted several of these arguments. The court held that the complaint failed to state a cause of action because the facts alleged did not establish that Buggy had received any assignable location rights from paragraph 14 of the lease. The court described the paragraph as a "personal accommodation" given to M. Bennett and Sons, and suggested that to avoid dismissal, Buggy would have to amend the complaint to show either an express or implied agreement between himself and Coney Island, and a subsequent breach. Record at 7a.

■ We have concluded that the order of the lower court must be reversed. In *Gekas v. Shapp*, 469 Pa. 1, 5, 364 A.2d 691, 693 (1976), the Supreme Court stated that the standards for sustaining demurrers are "quite strict": "If there is any doubt, this should be resolved in favor of overruling the

demurrer." Here, Coney Island's arguments are simply not convincing enough to support the demurrer.

In the first place, it is not obvious to us, as it apparently was to the lower court, that paragraph 14 of the lease represents a grant of rights by Coney Island to Indiana Vending Company, instead of a reservation of rights by M. Bennett and Sons, for the use of its own division, Indiana Vending Company. The interpretation of lease provisions, like contract provisions, is essentially a matter of ascertaining the intention of the parties. *See generally*, 21 *P.L.E. Landlord and Tenant* § 27 (1959). Here, the words involved are ambiguous and, as a consequence, they should be "construed with reference to their subject-matter and obvious purpose." *Camden S. D. & T. Co. v. Eavenson*, 295 Pa. 357, 145 A. 434, 435 (1929). Both sides agree that at least one purpose of paragraph 14 was to "protect [Bennett's] rental income," Record at 27a, 33a, but this alone is not dispositive of the meaning of the paragraph.

Even if it is conceded that paragraph 14 represents a grant of rights by Coney Island,[3] we do not see why this case should not be allowed to proceed further; the question remains, what is the nature of those rights? This court has said that "[a] license based on a valuable consideration is a contract, and the rights and obligations of the parties under such a license agreement depend on the provisions thereof." *Sparrow v. Airport Pk. Co. A.*, 221 Pa.Super. 32, 39, 289 A.2d 87, 91 (1972). The lower court did not approach the problem of sufficiency of consideration, and we are not convinced that it is properly resolvable on the basis of the complaint alone.

In addition, further questions need to be considered. If what is involved here is a contractual agreement, it must be decided whether the duties involved are too "unique" and "personal" to be delegated to a third party. This, we

---

**3.** On the other hand, if paragraph 14 represents a reservation of rights by M. Bennett and Sons for its Indiana Vending division, we can see no reason why M. Bennett and Sons could not transfer these rights to a third party.

believe, is a largely factual question, the focus of which is whether Coney Island was relying only on Indiana Vending Company to operate the machines. *See generally, Restatement of Contracts* 2nd, ¶ 150(2), and ¶ 151(2) (1973). The complaint alone does not supply a definitive answer to this question. Even if paragraph 14 were held to represent a license granted by Coney Island to Indiana Vending, and therefore normally revoked by assignment, *Dark v. Johnston*, 55 Pa. 164, 171 (1867), we cannot accept Coney Island's argument that examination of the complaint alone shows that no irrevocable license was created. In the first place, we do not agree that Buggy cannot show that he "reasonably" relied on "a promise to allow him to conduct the vending machine business."[4] Record at 34a. This is also a factual matter best resolved by further development of the case. *See Bieber v. Zellner*, 421 Pa. 444, 447, 448, 220 A.2d 17, 19 (1966); *Schuster v. Pennsylvania*, 395 Pa. 441, 455, 149 A.2d 447, 454 (1959). In addition, we disagree with Coney Island's assertion that there would be no point in finding an irrevocable license because Buggy did not expend a "large sum of money in reliance upon any promises of [Coney Island]" Record at 35a. We find no evidence in the record to support this assertion; indeed, Buggy points out that the purchase of the vending machines reflected a considerable expense. Record at 29a.

The order of the lower court is reversed and the case remanded for further proceedings consistent with this opinion.

WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.

4. While we do not attempt to resolve the question of whether Buggy "reasonably" relied on Coney Island's promise with respect to the vending machine business, we do note that in the agreement of sale attached to the complaint as Exhibit B, M. Bennett and Sons specifically sought to make the assignment of location rights "without representation or warranty." Record at 13a.